PARKS (UNITED STATES v.). See Cases Nos. 15,995 and 15,996.

PARMELE (UNITED STATES v.). See Case No. 15,997.

PARMELY v. IRON MOUNTAIN R. CO. See Case No. 10,845.

PARMENTER (CROWELL v.). See Case No. 3,446.

## Case No. 10,766.

PARMLEE et al. v. The CHARLES MEARS. [Newb. 197.] [1]

District Court, N. D. Ohio. Nov., 1856.

MARITIME LIENS—VESSEL IN HOME PORT—WHAT MUST BE SET FORTH IN LIBEL—VESSEL NOT YET EMPLOYED IN NAVIGATION — JURISDICTION ON THE LAKES.

1. Where a libel is filed to enforce a lien upon a domestic vessel, it must be distinctly set forth in the libel, by what municipal regulation or state law, such lien is conferred.

2. When a libel is filed to enforce a lien under the general maritime law, such facts must be set forth in the libel, which if proven, would satisfy the court, that the vessel was a foreign vessel at the time the lien attached.

3. The home port of a vessel, is the place where the law requires her to be registered, not necessarily the place where she was built.

4. When the general maritime law gives the mechanic or material man a lien for labor and materials, in the building of a vessel, the admiralty has jurisdiction to enforce it by a process in rem, even before the vessel is launched or employed in navigation.

[Cited in The Richard Busteed, Case No. 11,764.]

5. When a libel is filed to enforce a lien against a vessel before she is actually employed in navigation, the libel must show that the vessel is of the size and build fitted for maritime employment, and that her business was to be maritime navigation upon the lakes or high seas.

6. Independent of the act of 1845 [5 Stat. 726], extending the jurisdiction of the district courts upon the lakes, the maritime law has the same application to cases upon the lakes, as it has to those upon tide waters, both as to jurisdiction, and to forms of procedure and practice.

7. Whatever are deemed material, and sufficient averments in a libel upon the seaboard to give jurisdiction, would be considered the same upon the lakes.

In admiralty. In December, 1855, Charles Mears & Co., of Chicago, Illinois, agreed with

Luther Moses, of Cleveland, Ohio, to build the hull of and complete, with the exception of the engine, boiler, &c., a new propeller. At the same time, they agreed with libelants [Luman Parmlee and Joseph R. McGinnis] to build and furnish for said propeller, a new engine, boiler, &c., all to be completed and set up in the propeller ready for use. The agreement was in writing. The payments not having been made as agreed, the libelants filed their libel and allege substantially: 1st. That the propeller is of more than twenty tons burden, now lying at Cleveland, and that an agreement was made as above stated. 2d. That libelants performed their part of the contract. 3d. That C. Mears & Co. have not paid as they agreed. 4th to 9th, inclusive. That libelants were employed to superintend the work, and furnish other materials, &c., and claiming $1,587.27.

To this libel the respondents excepted substantially as follows, to the jurisdiction of the court: 1st. That the contracts of libelants having been made with the owners, there was no lien on the vessel. 2d. That the engine, &c., was furnished before the said propeller was employed in navigation, and before she was enrolled and licensed. 3d. That the libel does not allege enrollment and license; or, 4th, that she was a foreign vessel. 5th. The libel is insufficient, because it does not allege that the propeller was a vessel, or enrolled and licensed, &c. 6th. That it alleged, that the contracts were made with the owners, and consequently show there was no lien. 7th. That it alleges, that the contract was made, the work was done, the propeller was being built, and libelants resided in Cleveland, that consequently Cleveland was the home port of the vessel, &c.

S. B. Prentiss, for claimants, and sustaining the exceptions.

I. This is not a case within the act of February 26, 1845, and no jurisdiction is given by that act, it not being alleged in the libel that the propeller was, at the time of the contract or the furnishing the materials and performing the labor, or at the time of filing the libel, enrolled or licensed for the coasting trade, or at the time employed in business of commerce between ports and places in different states and territories upon the lakes and navigable waters connecting the said lakes. See stat. Conk. Adm. 3, 821, and note, 864, 865, and note; Ben. Adm. 141, 142. The libel must state every fact necessary to give the court jurisdiction. Ben. Adm. p. 218, § 402; Id. p. 221, § 408. There must be a lien upon the thing to proceed against it in rem. Id. pp. 213, 214, § 387; Id. p. 153, § 270; [The General Smith] 4 Wheat. [17 U. S.] 438; 4 Pet. Cond. R. 494.

II. If this was a foreign vessel the lien may exist either by virtue of the general maritime law or of the state law. Conk. Adm. 68, 69, 70. But if a domestic vessel, the general maritime law gives no lien; and

1 [Reported by John S. Newberry, Esq.]

the lien, if any, exists by virtue of the state law. Conk. Adm. 68, 69, 70; Ben. Adm. pp. 154, 155, § 272. The libel shows no lien by virtue of the laws of this state.

Is there a lien in this case? The materials furnished and labor performed were furnished and performed under and by virtue of a contract with the owner, for a vessel that was then being built, the contract being made and the labor and materials furnished and performed at the place where the vessel was being built, and nothing appearing in the libel but that that place was her home port, or that she was otherwise than a domestic vessel, nor is it alleged that she was built or designed for maritime business or navigation.

1. The contract being made with the owner, is there a lien? The articles furnished, except the superintendence, were for the equipment of the vessel, and in furnishing them the libelants were strictly material men, and their rights must be regulated and governed by the law as applicable to material men. Ben. Adm. pp. 151, 152, §§ 266, 267. The ship consists of the hull and spars, everything else is her equipment. Ben. Adm. p. 151, § 266. No lien for materials is ever implied from contracts made by the owner in person. It is only those contracts that the master enters into in his character of master, that specifically bind the ship or affect it by way of lien or privilege in favor of the creditor. When the owner is present, acting in his own behalf as such, the contract is presumed to be made with him on his ordinary responsibility, without a view to the vessel as a fund from which compensation is to be derived. Conk. Adm. 59; Fland. Mar. Law, p. 186, § 241; Harper v. New Brig [Case No. 6,090]; [The St. Jago De Cuba] 9 Wheat. [22 U. S.] 409; 5 Pet. Cond. R. 635, 636; The Phœbe [Case No. 11,064]; Sarchet v. The General Isaac Davis [Id. 12,357]. And to this rule there is no exception in favor of persons furnishing materials or labor for the original construction or building of a vessel. Conk. Adm. 66.

2. For materials furnished to a domestic ship, the material man has no lien on the ship, except it be given by the state law. Abb. Shipp. 143, and note; Id. 148, and note; 1 Kent, Comm. 379; 3 Kent, Comm. 168–170; Fland. Mar. Law, 183–186; Conk. Adm. 56, 57; Zane v. The President [Case No. 18,201]; Harper v. New Brig [supra]; Davis v. New Brig [Case No. 3,643]; [The St. Jago De Cuba] 9 Wheat. [22 U. S.] 409; 5 Pet. Cond. R. 435, 436; The Robert Fulton [Case No. 11,890]; [The General Smith] 4 Wheat. [17 U. S.] 438; 4 Pet. Cond. R. 494; The Jerusalem [Case No. 7,294]; [Peyroux v. Howard] 7 Pet. [32 U. S.] 324; The Nestor [Case No, 10,126]; The Marion [Id. 9,087]; Read v. Hull of a New Brig [Id. 11,609]; Sarchet v. The General Isaac Davis [Id. 12,357]; Davis v. Child [Id. 3,628].

3. The materials and labor in this case be-

ing furnished and performed while the vessel was being built, and before she was enrolled and licensed for the coasting trade, or employed in business of commerce or navigation, etc., the claim is not within the jurisdiction of the court, either under the general maritime law or the act of February 26, 1845. See stat. in Conk. Adm. 3; Bains v. The James & Catherine [Case No. 756]; Sarchet v. The General Isaac Davis [supra].

C. W. Noble, for libelants.

1. The jurisdiction of this court in this case does not depend upon the statute of 1845. We have a general maritime lien. Fitzhugh v. The Genesee Chief, 12 How. [53 U. S.] 443; Ben. Adm. 471; Rules Sup. Ct. U. S. No. 12; De Lovio v. Boit [Case No. 3,776]; Ben. Adm. §§ 209, 211–213, 261, 265, 267, 270. 271; Const. U. S. art. 1, §§ 8, 10; Id. art. 3, § 2; 1 Term R. 109; Cowp. 639; The Nestor [supra]; Purinton v. Hull of a New Ship [Case No. 11,473]; Smith v. Eastern Railroad [Id. 13,039]; Read v. Hull of a New Brig [supra].

2. This is strictly, and to all intents and purposes, a foreign vessel, and the contract is strictly a maritime contract. The residence of the owners determines what is the home port of the vessel, and the residence of the owners is sufficiently stated in the libel to be at Chicago, Illinois. Abb. Shipp. 179, note; 1 Stat. 55, 288; 2 Stat. 35, 313; Ben. Adm. §§ 24, 26, 28, 273, also page 471; 15 Johns. 298; Law, Jur. 8; Raymond v. The Ellen Stewart [Case No. 11,594], last clause of judge's opinion; Conk. Adm. 419, 66, 67, 69.

3. It is not necessary that the vessel should be enrolled or licensed under the general maritime law, or engaged in commerce or navigation between ports and places in different states and territories upon the lakes or navigable waters connecting said lakes. nor need it be set forth in the libel. Read v. Hull of a New Brig [supra]; De Lovio v. Boit [supra]; The Nestor [supra].

4. The fact that the owners are personally liable does not destroy the lien. The master, when he pledges the ship, does so only by virtue of his agency for the owners, and his contracts bind not only the ship but also the owners. If he could not bind the owner he could not bind the ship. The Nestor [supra]; 10 Mo. 531; Zane v. The President [supra]; 1 Term R. 109; Cowp. 639; Ben. Adm. §§ 265, 266; The Pacific [Case No. 10,643]; Rule 12, Sup. Ct.; Law, Jur. 8, 190, 194; Davis v. New Brig [supra].

WILLSON, District Judge. A libel in rem is filed in this case for a balance claimed to be due on a contract alleged to have been made on the 8th day of December, 1855, between the owners of said propeller and the libelants, under which contract the libelants built and furnished a steam engine, boiler and other machinery for said vessel. The al-

leged consideration to be paid for the engine and other materials was $6,890; of which amount the sum of $1,290 is claimed to be due and unpaid. The libelants also claim the further sum of $150 for superintendence in the building of the propeller; and aver that, at the time of making said contract and furnishing the machinery under it, the vessel was in process of construction, at the port of Cleveland, in the state of Ohio. Thomas Mears, of the state of Illinois, has interposed his claim as sole owner of the propeller, and filed exceptions (seven in number), to the sufficiency of the libel, and to the jurisdiction of the court.

I deem it unnecessary to examine or consider these exceptions in detail. The libel is defective, for the want of two material allegations. It does not state the residence or citizenship of the owners of the propeller at the time of making the contract and obtaining the labor and materials for the vessel. Neither does it set forth specifically the tonnage, purposes and intended use of said propeller, when built. If the owners, at the time of entering into this agreement, and procuring the work and materials, were residents of the state of Ohio, then the propeller was a domestic vessel, and no lien attached unless the local law gave a lien; in which case it should have been distinctly set forth in the libel by what municipal regulation or state law such lien was conferred. If the libelants rely upon a general maritime lien, they should spread upon the record these facts, which, if proved, would satisfy the court that the propeller, at the time of her construction, was a vessel foreign to the port of Cleveland. The place of building a ship or vessel, does not necessarily determine her home port. The home port is the place where the law requires her to be registered or enrolled. By the 3d section of the registry act of December, 1792, it is provided, "that every ship or vessel hereafter to be registered, &c., shall be registered by the collector of the district in which shall be comprehended the port to which such ship or vessel shall belong at the time of her registry, which port shall be deemed to be that at or near to which the owner, if there be but one, or if more than one, then where the ship's husband or managing owner, usually resides." And by the 4th section of the act of 1789, it was declared that the port to which any such ship or vessel shall be deemed to belong, is that, or nearest that in which the owners usually reside.

If, in this case, the facts are as claimed by counsel in the argument (though not apparent on the record), that C. Mears & Co., the owners of the propeller, were residents of Chicago, at the time of making the contract, and of building the propeller at Cleveland, then the vessel had the status of a foreign ship, and as such became subjected to all the incidents and responsibilities of a general maritime lien to the material men

in her building. All jurists agree, that contracts for the building of ships stand upon precisely the same ground as contracts for repairing, supplying and navigating them. They are maritime contracts, for maritime service, and the admiralty jurisdiction as rightfully attaches in the one case as the other. The Jerusalem [supra]; Davis v. New Brig [supra]; Read v. Hull of a New Brig [supra]. Where the general maritime law gives the mechanic or material man, a lien for labor and materials furnished in the building of a vessel, the admiralty has jurisdiction to enforce it by process in rem, even before the vessel is launched or employed in navigation. The law in such cases, gives the lien upon the water craft as an auxiliary to the personal security of the owner. It has its foundation in the same reasons that create a lien for repairs upon a ship in commission, when those repairs are made in a foreign port. In the case before us, it is no valid objection to the lien, that the labor was performed, and materials furnished in the building of the vessel, by virtue of a contract with the owners residing abroad. A contract with the ship's husband for supplies in a foreign port, is effectual to bind the owner in personam, while at the same time, the debt for the supplies is a lien upon the ship. The ship's husband in such a case binds the owner. The debt is created for the benefit, and on account of the owner. The contract is in effect with the owner, though made by his agent, the ship's husband; and the lien attaches to the ship to secure the payment of the debt created by the contract, for the sole reason, that the owner resides abroad. Now, it is for the same reason, the lien attaches to the vessel, where labor and materials are furnished in her building by virtue of a direct contract with the foreign owner. It is because the owner resides abroad. This policy of the law has a double purpose; it advances and facilitates the means of commerce, and secures and protects the material man against the necessity of resorting solely to the personal responsibility of a foreign debtor, in a foreign tribunal, to enforce a maritime contract. To give the admiralty court jurisdiction in such a case, however, the libel and record must show, that the vessel is of the size and build fitted for maritime employment, and that her business was to be maritime navigation upon the waters of the lakes, or upon the high seas. The libel in the present suit is defective in this particular, and for that cause the claimant's exception in that behalf, is sustained.

It is further objected by counsel for the claimant, that the libel does not contain averments, bringing the case within the provisions of the act of 26th February, 1845, entitled "An act extending the jurisdiction of the district courts to certain cases upon the lakes and navigable waters connecting the same." It is provided in this act of con-

gress, "that the district courts of the United States shall have, possess and exercise the same jurisdiction in matters of contract and tort, arising in, upon or concerning steamboats and other vessels of twenty tons burden and upwards, enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different states and territories upon the lakes and navigable waters, connecting said lakes, as is now possessed and exercised by the said courts in cases of the like steamboats, and other vessels employed in navigation and commerce upon the high seas or tide waters, within the admiralty and maritime jurisdiction of the United States." It is insisted that this court has not admiralty jurisdiction to enforce a maritime lien, except such lien accrued while the water craft was actually enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different states and territories. The forms prescribed for proceeding under this statute, by the learned judge of the district court for the Northern district of New York, in his excellent treatise upon the jurisdiction of the United States courts in admiralty and maritime causes, would require the libelant to aver, that the debt accrued while the vessel was in actual commission and engaged at the time in the business of commerce and navigation. Such undoubtedly was the requirement of the law when Judge Conkling published his work upon the admiralty jurisdiction. It was in accordance with the decisions of the supreme court of the United States in the cases of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, and The Orleans v. Phœbus, 11 Pet. [36 U. S.] 175. But since then, those decisions have been reversed and overruled, and the supreme court, in the case of The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443, has placed the admiralty jurisdiction of the lakes upon the same basis as that of the tide and salt waters. Hence now, independent of the act of February, 1845, the maritime law has the same application to cases upon the lakes as it has to those upon tide water, not only in matters of jurisdiction, but also in forms of procedure and practice. I certainly see nothing in the argument of counsel to change the views of this court, as expressed upon the same question, in the opinion delivered in the case of Wolverton v. Lacey [Case No. 17,932], and decided at the last February term. If the district court has jurisdiction in a given case upon the seaboard, like jurisdiction obtains upon the lakes. What would be deemed material and sufficient averments in the libel to give jurisdiction, in one case, would be regarded as material and sufficient averments in the other.

The exceptions to the jurisdiction of the court over the subject matter of the suit, are overruled, and the fourth and seventh exceptions to the sufficiency of the libel, are sustained. The libelants have leave to amend and the case is continued.